# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Integon Preferred Insurance Company,** | CASE NO. 1:16-cv-01496-AWI-SAB |
| **Plaintiff,** | |
| v. | ORDER PARTIALLY GRANTING MOTION TO STAY |
| **Isabella Alvarez Camacho, et al.,** | (Doc. No. 102) |
| **Defendants.** | |

This is a declaratory judgment lawsuit brought by an insurer, Plaintiff Integon Preferred Insurance Company ("Integon"), alleging that it is not required to provide insurance coverage under a commercial policy to its insured, Defendant X-Treme Ag Labor ("X-Treme"), as well as Defendant Valley Garlic, Inc. ("Valley Garlic"), for damages arising from an automobile accident that injured and killed several of X-Treme's employees. Some of Integon's arguments for why it is not required to provide coverage — for example, that the accident falls into one or more of the policy's exclusions — are, to some extent, at issue in a pending lawsuit in California state court. The plaintiffs of the California lawsuit are the employees (and families and representatives of the employees) who were injured or killed in the automobile accident, and they are claiming that the negligence of X-Treme and Valley Garlic caused the accident.

Before the Court is Valley Garlic's motion to stay, which asks the Court to stay this federal lawsuit until the state lawsuit has concluded. See Doc. No. 102. The Court will partially grant the motion by staying this lawsuit until March 22, 2019.

# I. Factual Background

X-Treme is a farm labor contractor doing business in California. Isabella Camacho is a principal of X-Treme. In March 2014, Camacho submitted an insurance application to Integon for commercial auto insurance for X-Treme. Integon accepted the application and issued a commercial auto insurance policy to Camacho d/b/a X-Treme. See Doc. No. 95, Ex. 4. Under the policy, Integon agreed to pay damages for which X-Treme was legally liable because of bodily injury and property damage caused by an accident and arising out of the ownership, maintenance, or use of an insured car, subject to the policy's exclusions. See id.

The policy contained several exclusions, such as the exclusion that states that the policy does not cover "bodily injury to an employee of an insured . . . arising out of or within the course of employment," or the exclusion that states that the policy does not cover "bodily injury or property damage arising out of the ownership, maintenance or use of an auto, other than your insured auto, which is owned by or furnished or available for regular use by you," or the exclusion that states that the policy does not cover "bodily injury or property damage caused when your insured auto is used to carry persons for a fee." See id. at 57-58.[1]

On June 20, 2015 — at which time the policy was in effect — several of X-Treme's employees traveled home together in a van after a day's work at one of Valley Garlic's farms in Gilroy, California. See id. at 48 ("Policy Period: 4/3/2015 – 4/3/2016"); Doc. No. 103 at 6. The driver of the van, Enrique Franco, was allegedly an employee of X-Treme who, as part of his employment, had been instructed by Camacho to drive the employees home. While driving the van eastbound on California State Route 152, Franco allegedly fell asleep, causing the van to swerve right onto the shoulder of the road. Then, Franco allegedly awoke and overcorrected the van, thereby causing the van to violently roll. Several passengers — all of whom were allegedly employees of X-Treme — were injured and four were killed. See Doc. No. 95.

The injured passengers and the estates and families of the killed passengers filed six separate negligence lawsuits in California state court against X-Treme, Camacho, Valley Garlic,

---

[1] Unless stated otherwise, when this order references page numbers of documents filed through the CM/ECF system, the page reference is to the ECF page number shown on the top-right corner of the document.

and Franco, amongst others. See Doc. No. 95. Three of the lawsuits were filed in February 2016; one in August 2016; one in November 2016; and the last one in February 2017. The six lawsuits were consolidated into a single lawsuit, which is captioned Sandoval v. Valley Garlic, Inc., Case No. 16CV-00315 in the Superior Court of California, County of Merced. See Doc. No. 102-1. Trial in the consolidated state lawsuit is scheduled to begin on January 22, 2019. See Doc. No. 103 at 12. In the state lawsuit, Integon is providing a defense for X-Treme, Camacho, Valley Garlic, and Franco under a reservation of rights. See id. at 5-6; Doc. No. 102-1 at 2.

The plaintiffs in the state lawsuit alleged that Franco was operating the van as part of his employment with X-Treme. They also alleged that the van ride was provided to the X-Treme employees by X-Treme and Valley Garlic as part of X-Treme's and Valley Garlic's employment operations. They also alleged that the van ride was provided by X-Treme and Valley Garlic to the employees for a fee, and X-Treme and Valley Garlic deducted the fee from the employees' paychecks.

In October 2016, Integon filed this federal lawsuit against X-Treme, Camacho, Franco, and the some of the named plaintiffs in the consolidated state lawsuit. See Doc. No. 1. Integon subsequently amended its complaint three times to add additional defendants, including Valley Garlic. See Doc. No. 95. In the third amended complaint, Integon alleged that Camacho and X-Treme failed to disclose material facts to Integon when Camacho submitted the application for insurance. See id. Specifically, Integon alleged that Camacho and X-Treme failed to disclose that X-Treme would provide transportation to its employees, such as the employees who were injured and killed in the van accident. Id. Based on these allegations, Integon pleaded a claim for rescission of the insurance policy.

Integon also alleged that, for multiple reasons, any liability and damages arising from the claims in the state lawsuit are not covered by the insurance policy. For example, Integon suggested that the van accident is not covered by the insurance policy because the accident falls into one or more of the policy's exclusions. See id. On this basis, Integon pleaded two claims for declaratory judgment, one of which is for a declaration that Integon has no duty to indemnify X-Treme, Camacho, Valley Garlic, or Franco in the state lawsuit, and the other of which is for a

1 declaration that Integon has no duty to defend in the state lawsuit. The third amended complaint
2 does not specify the statutory basis for the two declaratory judgment claims, but the Court
3 construes the claims as being brought under 28 U.S.C. § 2201(a).[2]

4 In addition to the rescission and two declaratory judgment claims, Integon pleaded a claim
5 for recoupment of the defense costs that it has expended in the state lawsuit. Additionally, Integon
6 pleaded a claim for recoupment of any payments that Integon may make in the future to indemnify
7 X-Treme, Camacho, Valley Garlic, or Franco.

8 The Court issued a scheduling order in June 2017, but the deadlines and trial date in that
9 order were vacated because the Court learned that Valley Garlic intended to file a motion to stay
10 this federal lawsuit until the conclusion of the state lawsuit. See Doc. No. 101. Consequently,
11 there is currently no dispositive motion deadline or scheduled trial date in this federal lawsuit. By
12 contrast, in the state lawsuit, motions for summary judgment have been filed and heard and, as
13 previously noted, trial is scheduled for January 22, 2019, which is approximately one month away.
14 See Doc. 102-1 at 16; Doc. No. 103 at 12.

15 Valley Garlic filed the pending motion to stay; Integon filed an opposition; and Valley
16 Garlic filed a reply. See Doc. Nos. 102-104.

## II. Valley Garlic's Motion

In the motion to stay, Valley Garlic argues that this federal lawsuit should be stayed or dismissed until the completion of the state lawsuit. Valley Garlic based this argument on four separate doctrines and principles: (1) Brillhart abstention;[3] (2) Colorado River abstention;[4] (3) abstention under California law; and (4) a Landis stay.[5]

In opposition, Integon argued that none of the foregoing doctrines and principles support staying or dismissing this federal lawsuit.

---

[2] In Integon's opposition to Valley Garlic's motion to stay, Integon refers to 28 U.S.C. § 2201(a) when discussing its declaratory judgment claim. See Doc. No. 103 at 12-13.
[3] Brillhart abstention derives from Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491 (1942).
[4] Colorado River abstention derives from Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976).
[5] A Landis stay derives from Landis v. N. Am. Co., 299 U.S. 248 (1936).

4

## III. Discussion

**1.  <u>Brillhart</u> abstention**

<u>Brillhart</u> abstention provides that a federal district court may, in its discretion, abstain from hearing a declaratory judgment claim when a related lawsuit is pending in state court. See <u>Brillhart v. Excess Ins. Co. of Am.</u>, 316 U.S. 491, 495 (1942); <u>Scotts Co. LLC v. Seeds, Inc.</u>, 688 F.3d 1154, 1158 (9th Cir. 2012). To determine whether <u>Brillhart</u> abstention is appropriate, the court must weigh several factors.

Here, however, an analysis of the <u>Brillhart</u> factors is not required. This is because in the Ninth Circuit, <u>Brillhart</u> abstention is not appropriate if the federal lawsuit includes a claim that is "independent" of the declaratory judgment claim. <u>Seneca Ins. Co., Inc. v. Strange Land, Inc.</u>, 862 F.3d 835, 840 (9th Cir. 2017); <u>Scotts Co. LLC v. Seeds, Inc.</u>, 688 F.3d 1154, 1158 (9th Cir. 2012). A claim is independent of a declaratory judgment claim if the claim could be brought in federal court even if the declaratory judgment claim had not been brought or, similarly, the claim could continue to be maintained in federal court even if the declaratory judgment claim was dropped from the lawsuit. <u>Seneca Ins. Co., Inc.</u>, 862 F.3d at 840; <u>United Nat. Ins. Co. v. R&D Latex Corp.</u>, 242 F.3d 1102, 1113 (9th Cir. 2001). In other words, if the federal court has subject matter jurisdiction over the claim, and if the claim does not need to be joined with a declaratory judgment claim in order to be maintained in federal court, then the claim is independent. <u>Id.</u> In the context of insurance coverage lawsuits, independent claims may include bad faith, breach of fiduciary duty, rescission of the policy, injunctive relief, specific performance, and monetary relief, such as reimbursement of defense costs. <u>Seneca Ins. Co., Inc.</u>, 862 F.3d at 841; <u>Vasquez v. Rackauckas</u>, 734 F.3d 1025, 1040 (9th Cir. 2013); <u>R&D Latex Corp.</u>, 242 F.3d at 1114; <u>Gov't Employees Ins. Co. v. Dizol</u>, 133 F.3d 1220, 1225 & n.6 (9th Cir. 1998); <u>First State Ins. Co. v. Callan Assocs., Inc.</u>, 113 F.3d 161, 163 (9th Cir. 1997).

Here, Integon pleaded claims that are independent of the declaratory judgment claims — namely, claims for rescission of the policy and reimbursement of defense costs. Therefore, it would be improper for the Court to abstain under <u>Brillhart</u>. For this reason, the Court will deny Valley Garlic's motion to abstain under <u>Brillhart</u>.

1. **2.     Colorado River abstention**

Colorado River abstention provides that under truly exceptional circumstances a federal district court may abstain from adjudicating a lawsuit out of deference to a pending and parallel state lawsuit. Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 813 (1976). To determine whether Colorado River abstention is appropriate, the federal district court must evaluate and weigh eight factors. Seneca Ins. Co., Inc., 862 F.3d at 841.

The eight factors, which the Court will analyze below, are as follows: (1) which court first took jurisdiction over any property at stake; (2) whether the federal forum is inconvenient; (3) whether abstention will help avoid piecemeal litigation; (4) which court first obtained jurisdiction; (5) whether the state lawsuit can adequately protect the rights of the federal litigants; (6) whether state law controls the decision on the merits; (7) whether abstention will help avoid forum shopping; and (8) whether the state lawsuit will resolve all issues in the federal lawsuit. Id. at 841-42.

**A.     Which court first took jurisdiction over any property at stake**

This factor is irrelevant here because this lawsuit does not involve a specific piece of property. See R.R. St. & Co. Inc. v. Transp. Ins. Co., 656 F.3d 966, 979 (9th Cir. 2011) (calling this factor "irrelevant" when the dispute does not involve a specific piece of property). Therefore, this factor does not weigh in favor of abstention.

**B.     Whether the federal forum causes inconvenience**

This factor is neutral because the federal and state courthouses are in relatively close proximity to each other and the state forum is located within this Court's federal district. See id. Any inconvenience of appearing in the federal forum will be nearly equal to the inconvenience of appearing in the state forum. Therefore, this factor does not weigh in favor of abstention.

**C.     Whether abstention will avoid piecemeal litigation**

In the context of Colorado River abstention, "[p]iecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." Seneca Ins. Co., Inc., 862 F.3d at 842. Nearly all lawsuits that are prone to a Colorado

River analysis will be susceptible to creating some extent of piecemeal litigation. Id. Therefore, for this factor to weigh in favor of abstention, there must also be "exceptional circumstances." Id.

Exceptional circumstances exist when there is a "special or important rationale or legislative preference for resolving [all] issues in a single proceeding." Id. at 843; see also United States v. Morros, 268 F.3d 695, 706–07 (9th Cir. 2001) ("[I]t is evident that the avoidance of piecemeal litigation factor is met, as it was in Colorado River itself, only when there is evidence of a strong federal policy that all claims should be tried in the state courts."). For example, in Colorado River, exceptional circumstances existed because there was a strong federal policy for adjudicating the water rights claims in a single proceeding, as was evidenced by the McCarran Amendment, 43 U.S.C. § 666. See Colorado River, 424 U.S. at 819 (1976). Exceptional circumstances do not arise simply because a lawsuit involves multiple defendants, numerous claims, and complex state tort, insurance, or contract issues. See Seneca Ins. Co., 862 F.3d at 843.

Here, piecemeal litigation will possibly result if the Court does not abstain. This is because, as Valley Garlic points out, in both the federal and state lawsuits some of the same questions of law and fact will likely be answered. For example, in both the federal and state lawsuits, there appears to be a question of whether the van ride was operated and provided by X-Treme or Valley Garlic as a part of X-Treme's or Valley Garlic's employment operations. In the federal lawsuit, the answer to this question may be material because if X-Treme or Valley Garlic was responsible for providing the van ride as part of its employment operations, then (1) a policy exclusion may be triggered and (2) this finding may be circumstantial evidence that Camacho was not truthful on the insurance application. Likewise, in the state lawsuit, the answer to this question may be material because if X-Treme or Valley Garlic was responsible for providing the van ride as part of its employment operations, then the state plaintiffs could argue that X-Treme or Valley Garlic owed the van passengers a duty of care and the state defendants could argue that workers compensation is the exclusive remedy.

However, even though piecemeal litigation will possibly result if the Court does not abstain, there are no exceptional circumstances here. Valley Garlic contends that insurance and contract law are largely governed by state law and, therefore, state courts are best suited to handle

7

such disputes. But this argument falls short of demonstrating an exceptional circumstance because it fails to demonstrate that there is a special or important rationale or federal legislative preference for resolving all issues in a single proceeding. That a body of law, such as tort, insurance, or contract law, is largely the product of the states does not lead to the conclusion that Congress intended for tort, insurance, or contract disputes to be resolved in a single state proceeding. As the Ninth Circuit has stated, "adjudications of tort and insurance disputes — they are the stuff of diversity jurisdiction. Nothing about [such] dispute[s] evinces a special or important rationale or legislative preference for resolving these issues in a single proceeding." Seneca Ins. Co., 862 F.3d at 843; see also Dizol, 133 F.3d at 1225 ("[T]here is no presumption in favor of abstention in declaratory actions generally, nor in insurance coverage cases specifically. We know of no authority for the proposition that an insurer is barred from invoking diversity jurisdiction to bring a declaratory judgment action against an insured on an issue of coverage."); Travelers Indem. Co. v. Madonna, 914 F.2d 1364, 1369 (9th Cir. 1990) ("This case involves ordinary contract and tort issues and is thus unlike Colorado River where important real property rights were at stake and where there was a substantial danger of inconsistent judgments.").

Therefore, because there is not a special or important rationale or legislative preference for resolving the issues in this federal lawsuit in a single state proceeding, this factor does not weigh in favor of abstention.

Additionally, it is worth noting that when the pending state lawsuit has not yet decided the questions of law and fact that overlap with the federal lawsuit, the possibility of piecemeal litigation is lessened. This is because the state lawsuit could settle before trial, in which case the overlapping questions would not be answered in the state lawsuit, or the federal lawsuit could answer the overlapping questions before the state court, thereby possibly imposing issue preclusion constraints on the state lawsuit. See Madonna, 914 F.2d at 1369 ("Since at the time of the district court's stay order the state court had made no rulings whatsoever in regard to this dispute, there is no certainty that duplicative effort would result."). Here, it appears that the state lawsuit has not yet answered the overlapping questions identified supra. Therefore, although

piecemeal litigation is possible if this federal lawsuit is not abstained, piecemeal litigation is not certain. This lessens any weight that this factor could have contributed towards abstention.

### D. Which court first obtained jurisdiction

This factor is concerned with protecting against wasting judicial resources. Madonna, 914 F.2d 1364 at 1370. Therefore, beyond merely asking whether the state court or federal court took jurisdiction first, this factor considers the extent to which the state and federal lawsuits have progressed. Seneca Ins. Co., 862 F.3d at 843; Madonna, 914 F.2d 1364 at 1370. The more a federal lawsuit has progressed, the less this factor weighs in favor of abstention; and the less a state lawsuit has progressed, the less this factor weighs in favor of abstention.

Here, the state lawsuit has progressed far more than this federal lawsuit. In the state lawsuit, discovery has concluded, the summary judgment deadline has passed, and trial is scheduled to commence on January 22, 2018, which is approximately one month away. By contrast, in this federal lawsuit, discovery has not concluded, the summary judgment deadline has not expired, and there is not yet a scheduled trial date. Therefore, abstention would not cause a substantial waste of this Court's judicial resources. Consequently, this factor does not weigh against abstention.

### E. Whether state or federal law provides the rule of decision on the merits

The presence of federal law issues in a federal lawsuit weighs against abstention, and the presence of state law issues in a federal lawsuit weighs in favor of abstention only if the state law issues are complex and difficult issues better resolved by the state court. Seneca Ins. Co., Inc., 862 F.3d at 844. Complex and difficult issues better resolved by the state court do not usually include disputes over insurance coverage, breach of contract, misrepresentation, indemnification, or subrogation. Id. Federal courts are fully capable of dealing with these issues. Id.

Here, the claims and defenses in this federal lawsuit derive from insurance and contract law, both of which are largely the product of the states. But the claims and defenses do not involve complex and difficult issues better resolved by the state court. Therefore, this factor does not weigh in favor of abstention.

///

### F. Whether the state lawsuit can adequately protect the rights of the federal litigants

If the state lawsuit cannot adequately protect the rights of the federal litigants, then this factor weighs against abstention. R.R. St. & Co. Inc., 656 F.3d at 981; see also Seneca Ins. Co., Inc., 862 F.3d at 845 ("[T]he adequacy factor pertains to whether there is an impediment to the state court protecting the litigants' federal rights."). A state lawsuit cannot adequately protect the rights of the federal litigants if the federal litigants would not be able to raise and enforce their claims in the state lawsuit. Id. For example, a state lawsuit might be inadequate if the state court will refuse to compel arbitration under the Federal Arbitration Act per the federal litigant's request, see Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 27 (1983), or if the state court lacks jurisdiction to hear the federal litigant's claim. See Holder v. Holder, 305 F.3d 854, 869 n.5 (9th Cir. 2002). This factor carries weight only if it weighs against abstention, which means that even if the state lawsuit can adequately protect the rights of the federal litigants, this factor does not weigh in favor of abstention. Seneca Ins. Co., Inc., 862 F.3d at 845.

Here, Integon's claims are for a declaration of the rights and responsibilities under the insurance policy, rescission of the policy, and reimbursement of expended defense costs and future indemnification payments. Neither Valley Garlic nor Integon have argued that these claims would be impeded if they were brought before the state court, and the Court foresees no "adequacy" impediment to these claims if they were brought before the state court. Therefore, this factor is neutral.

### G. Whether abstention will avoid forum shopping

If the plaintiff in the federal lawsuit is forum shopping, then this factor weighs in favor of abstention. R.R. St. & Co. Inc., 656 F.3d at 976; see also Seneca Ins. Co., Inc., 862 F.3d at 846. Forum shopping refers to "[t]he practice of choosing the most favorable jurisdiction or court in which a claim might be heard." R.R. St. & Co. Inc., 656 F.3d at 981. But forum shopping does not entail a party acting within its rights by filing a lawsuit in the forum of its choice. Seneca Ins. Co., Inc., 862 F.3d at 846. "The desire for a federal forum is assured by the constitutional provision for diversity jurisdiction and the congressional statute implementing Article III." R.R. St. & Co. Inc., 656 F.3d 966 at 982. Therefore, the Ninth Circuit is cautious about labeling as

1  forum shopping a plaintiff's desire to bring previously unasserted claims in federal court. Id.
2  However, when a party improperly seeks more favorable rules in its choice of forum or pursues
3  suit in a new forum after facing setbacks in an earlier proceeding, then this conduct may evidence
4  forum shopping. Seneca Ins. Co., Inc., 862 F.3d at 846.

Here, there is no evidence before the Court that Integon chose this federal forum to benefit from more favorable rules or after facing setbacks in an earlier proceeding in a different forum. In other words, there is no evidence before the Court that Integon forum shopped. That Integon filed its claims in this federal forum after the filing of the state lawsuit does not, by itself, indicate forum shopping. Therefore, this factor does not weigh in favor of abstention.

### H. Whether the state lawsuit will resolve all issues in federal lawsuit

If there is a substantial doubt that the state lawsuit will completely and promptly resolve all issues in the federal lawsuit, then this factor precludes abstention. Id. at 845; see also Cone Mem'l Hosp., 460 U.S. at 28; Intel Corp. v. Advanced Micro Devices, Inc., 12 F.3d 908, 913 (9th Cir. 1993) ("[A] district court may enter a Colorado River stay order only if it has 'full confidence' that the parallel state proceeding will end the litigation.") (quoting Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 277 (1988)). In other words, this factor seeks to ensure that, assuming the federal lawsuit is abstained and the state lawsuit is concluded, the federal court has nothing further to do in resolving any substantive part of the federal claims. Holder, 305 F.3d at 868 (quoting Moses H. Cone, 460 U.S. at 28). For example, in Intel Corp., the Ninth Circuit concluded that a stay was inappropriate when there was a good chance that the federal district court would have to eventually adjudicate the federal lawsuit because the state lawsuit would not resolve all issues in the federal lawsuit. Intel Corp., 12 F.3d at 913. Similarly, in Holder, the Ninth Circuit reversed a stay because the federal plaintiff likely could not have maintained his federal claim in the state lawsuit. Holder, 305 F.3d at 868-70.

A test for analyzing this factor is to assume the state court decision is made before the federal court decision and has preclusive effect on the federal lawsuit. Then, if the federal lawsuit would not be resolved by simply according preclusive effect to the state decision, then this means that there is not a complete resolution. Holder, 305 F.3d at 868. Accordingly, this factor requires

1  "parallelism" between the state and federal lawsuits. Seneca Ins. Co., Inc., 862 F.3d at 845.

2  Substantial similarity, not exact parallelism, between the claims in the state and federal lawsuits is

3  required for the state lawsuit to be capable of resolving all issues in the federal lawsuit. Id.

4  While this factor is dispositive if the state lawsuit will not resolve all issues in the federal

5  lawsuit, Holder, 305 F.3d at 870, this factor cannot weigh in favor of abstention. In other words,

6  if the state lawsuit can completely and promptly resolve all issues in the federal lawsuit, then this

7  factor is neutral. Seneca Ins. Co., Inc., 862 F.3d at 845.

8  Here, there is a substantial doubt that the state lawsuit will completely and promptly

9  resolve all issues in this federal lawsuit. For example, whether Camacho made misrepresentations

10 on the insurance application is a fundamental question to Integon's rescission claim in this federal

11 lawsuit, but there is no certainty that the issue will be decided in the state lawsuit, which does not

12 include claims that focus on the issuance and interpretation of the insurance policy. Likewise,

13 there is a substantial doubt that the state lawsuit will decide the coverage questions that are

14 fundamental to Integon's declaratory judgment claims in this federal lawsuit — e.g., whether the

15 van accident falls into an insurance exclusion and whether Integon has a duty to indemnify or

16 defend X-Treme or Valley Garlic or Franco. While there may be findings made in the state

17 lawsuit that bear on the coverage questions in this federal lawsuit, such as whether the van ride

18 was provided to the passengers as a part of X-Treme's or Valley Garlic's employment operations,

19 those findings will not completely decide the coverage claims in this federal lawsuit.

20 Consequently, because there is a substantial doubt that the state lawsuit will completely and

21 promptly resolve all issues in this federal lawsuit, this factor precludes abstention.

22 **I.    Balancing of factors**

23 The analysis of the factors begins with the scales being heavily tilted in favor of the federal

24 court not abstaining. Id. at 842. The factors do not constitute a mechanical checklist, and some

25 factors may be applicable to a lawsuit while others are not. Id.

26 Here, the balance of the factors weighs heavily against abstention, and this is made clear

27 by the following three points. First, the final factor — that there is a substantial doubt that the

28 state lawsuit will completely and promptly resolve all issues in this federal lawsuit — precludes

12

abstention. Second, the only factor that weighs in favor of abstention is that the state court took jurisdiction before this Court took jurisdiction. Third, all the other factors are either neutral or weigh against abstention. Thus, in sum, the scales weigh heavily in favor of not abstaining under Colorado River. For this reason, the Court will not abstain under Colorado River and Valley Garlic's motion to abstain under Colorado River will be denied.

**3.    Abstention under California law**

Valley Garlic argues that abstention is warranted under certain abstention doctrines established by the California courts. For example, Valley Garlic cites to Montrose Chem. Corp. v. Superior Court, 6 Cal. 4th 287 (1993) [hereinafter Montrose I], in which the California Supreme Court stated that "[t]o eliminate the risk of inconsistent factual determinations that could prejudice the insured, a stay of the declaratory relief action pending resolution of the third party suit is appropriate when the coverage question turns on facts to be litigated in the underlying action." Id. at 301. Valley Garlic also cites to Haskel, Inc. v. Superior Court, 33 Cal. App. 4th 963 (1995), in which the California Court of Appeal stated that "[i]t is only where there is no potential conflict between the trial of the coverage dispute and the underlying [coverage] action that an insurer can obtain an early trial date and resolution of its claim that coverage does not exist." Id. at 979 (emphasis in original).

Despite Valley Garlic's heavy reliance on California's abstention doctrines, Valley Garlic failed to explain why a federal district court would be bound or guided by state abstention doctrines. Valley Garlic allocated only a single sentence to this issue, asserting that "[f]ederal courts in California have followed state court precedents in determining whether to stay insurance coverage cases under identical circumstances." Doc. No. 102-1 at 8. To support this assertion, Valley Garlic cited, but did not discuss, only two federal district court decisions, neither of which are binding on the Court. Valley Garlic did not cite any binding or persuasive federal appellate authority to support its assertion.

The Court rejects the premise from Valley Garlic that this federal Court — which has subject matter jurisdiction over Integon's claims pursuant to Article III of the Constitution, 28 U.S.C. § 1332, and 28 U.S.C. § 2201 (with respect to Integon's declaratory judgment claims) —

should be guided by California's abstention doctrines when deciding whether to exercise jurisdiction over Integon's claims. This is because federal abstention doctrines are narrowly, sparingly, and carefully crafted by the Supreme Court, not the state courts. If the federal courts were to follow California's judicially-created abstention doctrines — some of which are more liberal in allowing abstention than the Supreme Court's abstention doctrines — then the carefully-crafted narrowness of the Supreme Court's abstention doctrines would be blunted.

Compare, for example, the Supreme Court's Brillhart abstention doctrine with California's abstention doctrine applied in Montrose I and Haskel. Both doctrines specifically apply to the situation wherein a defendant in a liability lawsuit is insured and the insurer files a separate lawsuit with a declaratory judgment claim on the issue of whether the insurance policy covers the defendant in the liability lawsuit. What commonly arises in that situation is the question of whether, as Valley Garlic's motion to stay illustrates here, the declaratory judgment lawsuit should be stayed until the completion of the liability lawsuit. The Supreme Court's Brillhart abstention doctrine and the Ninth Circuit's treatment of that doctrine answer the question by requiring the federal district court to apply a multi-factor balancing test. Additionally, the Ninth Circuit holds that Brillhart abstention of the declaratory judgment claim is not appropriate if the declaratory judgment claim co-exists with other independent claims, such as claims for bad faith, breach of fiduciary duty, rescission of the policy, injunctive relief, specific performance, and monetary relief, such as reimbursement of defense costs. Seneca Ins. Co., Inc., 862 F.3d at 841; Vasquez, 734 F.3d at 1040; R&D Latex Corp., 242 F.3d at 1114; Dizol, 133 F.3d at 1225 & n.6; Callan Assocs., Inc., 113 F.3d at 163. By contrast, California's abstention doctrine for declaratory judgment coverage claims, as it is discussed in Montrose I and Haskel, does not include the multi-factor balancing test or the rule that the existence of other independent claims precludes abstention. Thus, California's abstention doctrine would swallow up the Brillhart abstention doctrine if it were adhered to by the Court in this lawsuit. That would be an encroachment upon the Court's procedural rules and law.

In other words, Valley Garlic's position contravenes the Erie doctrine, which provides that federal courts sitting in diversity jurisdiction follow state substantive law, but not state procedural

14

law.  See Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938).  This is precisely the reason that Judge Nguyen of the Ninth Circuit stated that she was "doubtful that the California equitable abstention doctrine is a substantive rule that must apply in a federal diversity jurisdiction case." MacRae by & through Watters v. HCR Manor Care Servs., LLC, 691 F. App'x 476, 479 (9th Cir. 2017) (Nguyen, J., concurring).  In MacRae, the federal district court sitting in California had diversity jurisdiction over the federal lawsuit.  The plaintiff took the position that California's abstention doctrines could be applied to the federal lawsuit.  But in Judge Nguyen's concurring opinion, Judge Nguyen objected to this position.  (Judge Nguyen wrote her concurrence specifically to address the state abstention doctrine issue, an issue that was not addressed in the majority opinion.)  Judge Nguyen began by recognizing the limited scope of the federal abstention doctrines, stating that federal abstention "is permissible only in a few carefully defined situations with set requirements."  Id. at 478 (citing United States v. Morros, 268 F.3d 695, 703 (9th Cir. 2001)).  Judge Nguyen then stated that "I am aware of no appellate authority — and [the plaintiff] has identified none — holding that the California abstention doctrine qualifies as one such carefully defined situation."  Id.  Judge Nguyen then explained that the plaintiff's position — which is akin to Valley Garlic's position here — runs afoul of the Erie doctrine because "federal courts sitting in diversity jurisdiction follow state substantive law, but not state procedural law," and California's abstention doctrine appeared to be procedural.  Id. at 478-79.  Judge Nguyen concluded by citing the Seventh Circuit, which had reversed a federal district court that had applied a liberal state abstention doctrine instead of the applicable federal abstention doctrine. Stated Judge Nguyen,

> Where the requirements for federal abstention were not met, the Seventh Circuit has reversed on Erie grounds the dismissal of a claim under a state rule providing for discretionary dismissal.  The state rule and the federal abstention doctrine at issue conflicted because they both addressed the problem of parallel litigation in multiple venues, but the state rule applied "liberally," whereas the federal abstention doctrine was "reserved for exceptional circumstances."  The [Seventh Circuit] held that application of the state rule in federal court would violate Erie

///

> because the state rule was akin to other rules involving venue and therefore was procedural rather than substantive.

(citing <u>AXA Corp. Solutions v. Underwriters Reinsurance Corp.</u>, 347 F.3d 272, 277-78 (7th Cir. 2003)).

Here, in harmony with the reasoning of Judge Nguyen in <u>McRae</u> and the Seventh Circuit in <u>AXA Corp. Solutions</u>, the Court will not apply California's abstention doctrines to this federal lawsuit. Therefore, the Court will deny Valley Garlic's motion to stay under California abstention doctrines.

**4.     <u>Landis</u> stay**

A federal district court has inherent power to stay a lawsuit based on considerations of economy of time and effort for the court, counsel, and litigants. <u>Landis v. N. Am. Co.</u>, 299 U.S. 248, 254-55 (1936). If there is a pending proceeding that is independent of but related to the federal lawsuit, then in certain circumstances the federal district court may stay the federal lawsuit while the independent proceeding moves forward. <u>Dependable Highway Exp., Inc. v. Navigators Ins. Co.</u>, 498 F.3d 1059, 1066 (9th Cir. 2007); <u>Leyva v. Certified Grocers of California, Ltd.</u>, 593 F.2d 857, 863 (9th Cir. 1979). The independent proceeding need not be controlling of the federal lawsuit to be considered related. <u>Id.</u> at 863-64. Rather, an independent proceeding is related to the federal lawsuit if the proceeding will likely settle and simplify issues in the federal lawsuit. <u>Landis</u>, 299 U.S. at 256.

Here, the state lawsuit is related to this federal lawsuit under <u>Landis</u>. This is because the state lawsuit will likely narrow, settle, or simplify some of the issues in this federal lawsuit. For example, the state lawsuit will likely decide questions about whether X-Treme or Valley Garlic was responsible for providing the van transportation as part of its employment operations. The state lawsuit's treatment of and answer to such questions, even if not controlling on this federal lawsuit, will likely narrow and simplify the parties' treatment and the Court's understanding of those questions in this lawsuit — questions that appear to be relevant to Integon's claims in this federal lawsuit.

/ / /

**A. Weighing competing interests**

To determine whether to impose a Landis stay, the federal district court should weigh the following "competing interests": (1) whether there is a fair possibility that a stay will cause damage; (2) whether a party may suffer hardship or inequity if a stay is not imposed; and (3) whether a stay will contribute to the orderly course of justice. CMAX, Inc. v. Hall, 300 F.2d 265, 268 (9th Cir. 1962). Additionally, a Landis stay (4) cannot be imposed only for judicial economy and (5) cannot be indefinite and result in undue delay. Dependable Highway Exp., Inc., 498 F.3d at 1066-67.

*i. Whether fair possibility that stay will cause damage*

If there is even a fair possibility that a stay will work damage to someone other than the movant, then a stay may be inappropriate absent a showing of hardship or inequity to the movant. Landis, 299 U.S. at 255. Here, there is not a fair possibility that Integon[6] will be damaged by staying this lawsuit until March 22, 2019, which is approximately 90 days away. Integon argues that it will be damaged because it will continue to provide a defense to Valley Garlic in the state lawsuit during a stay. But this claim is unavailing for two distinct reasons.

First, Integon is voluntarily providing a defense to Valley Garlic in the state lawsuit, and Integon has not demonstrated that it could not simply discontinue providing the defense if it wanted to. Integon's fear of being subject to a bad faith claim is a fear that Integon is responsible for; it is a fear inherent in Integon's chosen line of work.

Second, assuming for the sake of argument that Integon was forced to provide a defense through March 22, 2019, there is still not a fair possibility that Integon will be damaged by the stay. The trial in the state lawsuit is scheduled to begin on January 22, 2019, and the Court assumes — based on its extensive experience with trials and its understanding of the claims in the state lawsuit — that the trial will not last more than 60 days. Sixty days from January 22, 2019, is approximately March 22, 2019. The Court is virtually certain that Integon's claims in this federal lawsuit will not be decided by March 22, 2019, even if a stay were not imposed. Therefore, even if a stay were not imposed, it is very likely that Integon will not receive a decision from the Court

---
[6] Integon is the only party that filed an opposition to Valley Garlic's motion to stay.

1 on its declaratory judgment claims by the close of trial in the state lawsuit. This means that
2 Integon will be providing a defense in the state lawsuit through the completion of the state trial
3 regardless of whether this federal lawsuit is stayed until March 22, 2019.

Accordingly, because there is not a fair possibility that Integon will be damaged by staying this lawsuit until March 22, 2019, this competing interest does not weigh against a <u>Landis</u> stay.

### *ii.* *Whether movant will suffer hardship or inequity if stay is not imposed*

This competing interest comes into play if there is a fair possibility that a stay will cause damage to a party opposing the stay. <u>Id.</u> The Court already concluded that Integon will not be damaged by staying this federal lawsuit until March 22, 2019, so this factor does not come into play. But for the sake of argument, the Court will address this competing interest anyway.

Valley Garlic offers two explanations for how it will suffer hardship or inequity if a stay is not imposed. First, Valley Garlic explains that it will be required to fight a two-front court battle, defending itself in the state lawsuit while also defending itself in this federal lawsuit. This explanation is unavailing because being required to defend oneself in an independent proceeding does not consist of a hardship or inequity under <u>Landis</u>. <u>See</u> <u>Lockyer v. Mirant Corp.</u>, 398 F.3d 1098, 1112 (9th Cir. 2005). Additionally, some courts posit that an insured does not truly bear the burden of fighting a two-front court battle if its insurer is the one providing the defense in the independent proceeding, <u>see, e.g.</u>, <u>Great Am. Assurance Co. v. M.S. Indus. Sheet Metal, Inc.</u>, 2011 WL 13228037, at *3 (C.D. Cal. Sept. 22, 2011), which is the case here.

Second, Valley Garlic explains that Integon and the plaintiffs in the state lawsuit will take information gained in the federal lawsuit and use that information in the state lawsuit to Valley Garlic's detriment. States Valley Garlic,

> [Integon will seek] baseless and inappropriate discovery in this [federal] regarding the alleged operations of Camacho regarding transportation of farm labor contractor employees, its insureds [*sic*] relationships with the underlying plaintiff, and conduct taken by Camacho, on her own behalf, on behalf of X-Treme and on behalf of Valley Garlic, it could be aiding the underlying plaintiffs.

Doc. No. 102-1 at 10. These statements from Valley Garlic, however, are too vague and speculative for the Court to find a clear case of hardship and inequity in them. The Court, therefore, does not find this explanation persuasive.

In sum, it is not clear that Valley Garlic will suffer hardship and inequity if this federal lawsuit is not stayed. Therefore, if this competing interest were at play (which it is not), then it would not weigh in favor of a Landis stay.

### iii. *Whether imposing a stay will contribute to the orderly course of justice*

The third competing interest is whether imposing a stay will contribute to the orderly course of justice. CMAX, Inc., 300 F.2d at 268. A stay contributes to the orderly course of justice if it will simplify the issues, evidence, or questions of law before the federal court. Id. This can occur, for example, when the related proceeding will help develop comprehensive evidence that bears on the questions at issue in the federal lawsuit. Id. at 269. This remains true even when the federal court is not bound by the findings and conclusions drawn from the related proceeding, so long as the related proceeding provides valuable assistance to the federal lawsuit. Lockyer, 398 F.3d at 1111.

Here, as discussed supra, the adjudication of the state lawsuit will likely develop evidence and findings that bear on questions at issue in this federal lawsuit. Therefore, the Court and the parties can be assisted by the state lawsuit's development of the evidence and findings, regardless of whether this federal Court is bound by such evidence and findings. Accordingly, this competing interest weighs in favor of a Landis stay.

### iv. *Whether the stay is only for judicial economy*

"[C]ase management standing alone is not necessarily a sufficient ground to stay proceedings." Dependable Highway Exp., Inc., 498 F.3d at 1066. Here, the Court will not impose a Landis stay simply to assist with case management, as is demonstrated by the analysis of the foregoing competing interests. Therefore, this competing interest does not weigh against a Landis stay.

### v. *Whether the stay is indefinite or would result in undue delay*

If a stay under Landis is indefinite or would result in undue delay, then the stay is inappropriate. Id. at 1066-67. The length of a Landis stay should be short or a reasonable amount of time. Id.

Valley Garlic did not request a specific length of time for the requested Landis stay, other than to suggest that that the stay should last until the state lawsuit has concluded. As already stated, the Court assumes that if the state trial begins on January 22, 2019, then the state trial will conclude by March 22, 2019. For this reason, the Court will construe Valley Garlic's requested stay as lasting from now until March 22, 2019, which is approximately 90 days away.

Here, a Landis stay until March 22, 2019, is reasonably short, is not indefinite, and will not cause undue delay. Therefore, this competing interest does not weigh against a 90-day Landis stay.

### *vi.* *Balancing of competing interests*

None of the relevant competing interests weigh against a Landis stay of approximately 90 days, and the third competing interest weighs in favor of a Landis stay. Therefore, a Landis stay of approximately 90 days is appropriate.[7] The Court will grant Valley Garlic's motion to stay under Landis, and the Court will stay this lawsuit until March 22, 2019.

# ORDER

Accordingly, IT IS HEREBY ORDERED that:

1. Valley Garlic's motion to stay under Landis is GRANTED;
2. Valley Garlic's motion to stay under Brillhart, Colorado River, and California's abstention doctrines is DENIED;
3. This lawsuit is STAYED until March 22, 2019; and
4. Valley Garlic and Integon shall FILE a joint status report concerning the status of the state lawsuit by April 1, 2019.

IT IS SO ORDERED.

Dated:   December 18, 2018                          _____
                                                    SENIOR DISTRICT JUDGE

---

[7] Even if the second competing interest — whether Valley Garlic will suffer hardship if a stay is not imposed — were at play here, the weight of this competing interest would not change the Court's conclusion that the totality of the competing interests weighs in favor of a 90-day Landis stay.